UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **JEFFER ENGINEERING AND TECHNOLOGY CO., LTD.** | : | Case No. _____ |
| 4FL, B3 Saturn Building, | : | |
| No. 98 Star Road, | : | |
| New North Zone, | : | |
| Chongqing (401121), China | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **KNAUF INSULATION, INC.** | : | |
| One Knauf Drive, | : | |
| Shelbyville, Indiana 46176 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY ESTOPPEL, UNJUST ENRICHMENT, BREACH OF CONFIDENTIALITY AGREEMENT, AND MISAPPROPRIATION OF TRADE SECRETS**

For its Complaint against Defendant Knauf Insulation, Inc., Plaintiff JEFFER Engineering and Technology Co., Ltd. states as follows:

**The Parties**

1. JEFFER Engineering and Technology Co., Ltd. ("Jeffer") is an engineering contractor based in China that provides engineering, procurement, construction, and project management projects for clients worldwide, including in the United States.

2. Jeffer is headquartered in Chongqing, China and does not have a principal place of business in the United States.

3. Knauf Insulation, Inc. ("Knauf") is a German corporation and one of the world's largest manufacturers of insulation products and solutions.

4. Knauf is a Delaware for-profit corporation, whose principal office is located at One Knauf Drive, Shelbyville, Indiana 46176.

## Jurisdiction and Venue

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and this is the judicial district in which Defendant is subject to personal jurisdiction.

## Background and Facts Common to All Counts

**A.  THE CONTRACT**

7. On or about December 20, 2016, Jeffer entered into a contract with Knauf (the "Contract"). (Attached as Exhibit A).

8. The Contract mandates that Indiana law and forum governs any claim(s) arising out of it.

9. The Contract was for Jeffer to provide Knauf labor, materials, goods, and services in connection with the installation and construction of an upgraded and new batch house (the "Project") at Knauf's Inwood, West Virginia Facility.

10. As reflected on the Contract's Purchase Order (attached as Exhibit B), the price set for Jeffer to complete the Project was for $2,484,786.00.

11. The terms and conditions of the Contract set forth the following defined payment schedule:

- 35% down payment
- 25% delivery of equipment to site

- 20% after hot commissioning/Start up
- 10% after Site Acceptance Test (1 month after start up)
- 10% As built drawings/Final Maintenance Manuals/ Documentation

12. Knauf delayed the 35% down payment to Jeffer for almost a month past due when Jeffer was promised by Knauf to expect prompt payment.

13. To date, Knauf has paid Jeffer 80% of the Contract for the first three events of the Contract's payment schedule (35% down payment; 25% delivery of equipment to site; 20% after hot commissioning/Start up).

14. To date, Knauf has failed to pay Jeffer 20% of the Contract for the last two events of the Contract's payment schedule (10% after Site Acceptance Test; 10% As built drawings/Final Maintenance Manuals/Documentation).

**B.   THE SITE ACCEPTANCE TEST**

15. The Project involved two operating lines, the first of which became operational on September 24, 2017.

16. Jeffer was prepared to put the second line in commission on September 24, 2017.

17. The second line was not put in operation on September 24, 2017 due to environmental reasons attributed to Knauf.

18. As such, Knauf delayed Jeffer from completing a hot commission on the second line until October 17, 2017.

19. Due to additional delays not attributed to Jeffer, the second line's startup was conducted on November 4, 2017.

20. Per the terms of the Contract, Knauf was required to conduct the Site Acceptance Test one month after the start up time of the lines.

21. Thus, the Contract obligated Knauf to perform the Site Acceptance Test of both lines on or about December 4, 2017.

22. Due to Knauf's actions, both lines were shut down on December 4, 2017.

23. The Site Acceptance Test was conducted on both lines on December 6, 2017.

24. Representatives from both Jeffer and Knauf were present at the Site Acceptance Test on December 6, 2017.

25. Upon information and belief, regarding the Site Acceptance Test, Knauf has created additional requirements for Jeffer to overcome that were not included in the Contract.

26. Upon information and belief, the requirements of the Site Acceptance Test have been satisfied per the terms of the Contract.

27. Despite the ongoing operation of the two lines, Knauf has failed and refused to pay Jeffer the 10% ($248,478.60) of the Contract owed to Jeffer after the completion of the Site Acceptance Test.

C. **AS BUILT DRAWINGS/FINAL MAINTENANCE MANUALS/ DOCUMENTATION**

28. On December 5, 2017, Jeffer delivered (with confirmed receipt) electrical as-built drawings in pdf format to Knauf.

29. On December 17, 2017, Jeffer delivered mechanical as-built drawings in pdf format to Knauf.

30. On December 22, 2017 and December 24, 2017, Jeffer again delivered all as-built drawings to Knauf in AutoCAD format.

31. In addition, Jeffer provided Knauf with all maintenance manuals as well as some drawings for "spare parts" even though such drawings were not a part of the Contract.

32. For example, in October, 2017, Jeffer also provided Batch House training to four shifts of Knauf staff members, including providing training manuals as part of the service.

33. On December 20, 2017, all documents and extra spare parts from the Project were transferred and signed over to Knauf.

34. Knauf has failed and refused to pay Jeffer the 10% ($248,478.60) of the Contract price after Jeffer delivered the "As built drawings/Final Maintenance Manuals/ Documentation" to Knauf.

35. In addition to the twenty percent total owed to Jeffer per the terms of the Contract, Knauf also owes Jeffer additional costs associated with an approved change order relating to the electric hoist and control system ($4,580).

36. Accordingly, Knauf currently owes Jeffer $501,537.20 plus interest for the principal unpaid balance on the Contract.

37. Through Jeffer's efforts, the Project modernized Knauf's Inwood, West Virginia Facility with an increased capacity of 260 tons.

38. Due to these improvements, Knauf has been reaping the benefits of Jeffer's work.

39. Payment of the funds owed to Jeffer under the terms of the Contract is critical so that Jeffer may be properly compensated for its work on the Project and continue in its line of business.

**D.   THE CONFIDENTIAL DISCLOSURE AGREEMENT**

40. On or about December 16, 2016, Knauf and Jeffer executed the "Confidential Disclosure Agreement." (Attached as Exhibit C).

41. The Confidential Disclosure Agreement prohibited either party from disclosing "Confidential Information."

42. While not exhaustive, the Confidential Information as defined in the Confidential Disclosure Agreement includes "any and all information about or concerning the business, finances, affairs, operations, activities, products, and/or facilities of the Disclosing Party . . . including without limitation, any and all (a) product specifications, data, formulae, compositions, processes, sketches, photographs, drawings, samples, past, current and planned research and development, current and planned manufacturing, testing or distributions methods, processes and techniques, tooling, equipment, product parts and components, product research, design and development specifications, plans, research or development."

43. The Confidential Disclosure Agreement defines Trade Secrets as "(a) any and all information concerning the business and affairs of the Disclosing Party (including without limitation product specifications, data, know-how, formulae, compositions, processes, designs, sketches, photographs, graphic drawings, samples, inventions and ideas, past, current and planned research and development, current and planned manufacturing and distribution methods and processes, customer lists, current and anticipated customer requirements, (and price lists) that decries actual or potential independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and which is the subject of reasonable efforts to maintain its security; and (b) any and all information defined as a trade secret by Indiana's adoption of the Uniform Trade Secrets Act, Ind. Code Section 24-2-3-1, et seq . . . or by any other trade secret law or similar law."

44. The Confidential Disclosure Agreement also defines Trade Secrets as Confidential Information.

45. The Confidential Disclosure Agreement defines the Disclosing Party as "the party hereto which is disclosing or has disclosed Confidential Information to the other party hereto."

46. The Confidential Disclosure Agreement defines the Receiving Party as "the party which is receiving or has received Confidential Information from the Disclosing Party."

47. The Confidential Disclosure Agreement states that "the Receiving Party shall not (a) communicate, disclose, divulge, reveal or convey (whether directly, orally, in writing, electronically, or otherwise, voluntarily or involuntarily) in any manner or by any means of communication whatsoever, any Confidential Information, to any person or entity without the prior written consent of the Disclosing Party, (b) misappropriate (as defined in [Ind. Code Section 24-2-3-1] any Confidential Information, or (c) use or employ any Confidential Information for any purpose (other than two evaluate and carry out the Relationship) or to the detriment of the Disclosing Party or any of its affiliates."

48. Further, the Confidential Disclosure Agreement states that "[t]he Receiving Party acknowledges that damages for improper disclosure or use of Confidential Information or for other breach of this Agreement may be irreparable. The Disclosing Party is entitled to seek equitable relief, including permanent or temporary injunction and temporary restraining order, in addition to all other remedies, including enforcement against any and all disclosures of Confidential Information."

49. In addition, the Confidential Disclosure Agreement provides for "the prevailing party in any litigation to enforce the terms of this Agreement shall be entitled to recover court costs and reasonable attorneys' fees from the other party."

50. As a part of the Project, Jeffer disclosed Confidential Information and Trade Secrets to Knauf as defined in the Confidential Disclosure Agreement.

51. In December 2017, Knauf hired Batch House LLC to audit the Project.

52. Batch House LLC is a direct competitor to Jeffer.

53. Upon information and belief, Knauf provided Jeffer's Confidential Information and Trade Secretes regarding product specifications, drawings, schematics, diagrams, and manuals to Jeffer's competitor, Batch House LLC.

### First Cause of Action
### (Breach of Contract for Nonpayment)

54. Jeffer repeats and incorporates by reference the allegations in the preceding paragraphs.

55. The Contract is a valid and enforceable agreement between Jeffer and Knauf.

56. The Site Acceptance Test occurred on December 6, 2017.

57. Knauf agreed to pay ten percent ($248,478.60) of the Contract price to Jeffer "after Site Acceptance Test (one month after start up)."

58. After the completion of the Site Acceptance Test, Knauf failed to pay ten percent ($248,478.60) of the Contract price to Jeffer in accordance with the terms of the Contract.

59. Upon information and belief, Knauf has avoided paying on the Contract by creating additional requirements as to what the Site Acceptance Test entails.

60. Upon information and belief, the requirements of the Site Acceptance Test have been satisfied per the terms of the Contract.

61. On December 5, 2017, Jeffer delivered (with confirmed receipt) electrical as-built drawings in pdf format to Knauf.

62. On December 17, 2017, Jeffer delivered mechanical as-built drawings in pdf format to Knauf.

63. On December 22, 2017 and December 24, 2017, Jeffer again delivered all as-built drawings to Knauf in AutoCAD format.

64. In addition, Jeffer provided Knauf with all maintenance manuals as well as some drawings for "spare parts" even though such drawings were not a part of the Contract.

65. For example, In October, 2017, Jeffer also provided Batch House training to four shifts of Knauf staff members, including providing training manuals as part of the service.

66. On December 20, 2017, all documents and extra spare parts from the Project were transferred and signed over to Knauf.

67. Knauf agreed to pay ten percent ($248,478.60) of the Contract price to Jeffer upon the delivery of "As built drawings/Final Maintenance Manuals/Documentation."

68. After Jeffer delivered the "As built drawings/Final Maintenance Manuals/ Documentation" to Knauf, Knauf failed to pay ten percent ($248,478.60) of the Contract price to Jeffer in accordance with the terms of the Contract.

69. Jeffer incurred additional costs associated with the Contract due to a Knauf-approved change order relating to the electric hoist and control system ($4,580).

70. Knauf promised to pay $4,580 in exchange for the change order performance conducted by Jeffer.

71. Jeffer completed the $4,580 change order of which, Knauf did not pay.

72. Jeffer provided all the goods and services set forth in the Contract.

73. Knauf has not paid Jeffer for the goods and services provided.

74. Jeffer performed all obligations required of it under the Contract.

75. Knauf's failure to pay is a material breach and default in performance of the Contract.

76. The Contract provides for "reasonable attorneys' fees in addition to whatever remedies may be available" for the prevailing party "upon any default in performance or observance of any covenant" within the Contract.

77. Knauf owes Jeffer a remaining balance in the amount of Five Hundred and One Thousand, Five Hundred Thirty-Seven and 20/100 Dollars ($501,537.20), plus interest, attorneys' fees, and the costs of this action.

### Second Cause of Action
### (Promissory Estoppel)

78. Jeffer repeats and incorporates by reference the allegations in the preceding paragraphs.

79. In the alternative to the first cause of action, Knauf must pay Jeffer under the doctrine of promissory estoppel.

80. Knauf expressly and unambiguously promised to pay Jeffer for the goods and services Jeffer provided.

81. Knauf promised to pay Jeffer ten percent ($248,478.60) of the Contract "after Site Acceptance Test (one month after start up)."

82. Knauf promised to pay ten percent ($248,478.60) of the Contract price to Jeffer upon the delivery of "As built drawings/Final Maintenance Manuals/Documentation."

83. Knauf promised to pay $4,580 in exchange for the change order performance conducted by Jeffer.

84. Jeffer justifiably relied on those promises.

85. Jeffer's reliance was foreseeable and reasonable in that Knauf knew or should have known Jeffer would not provide goods and services if Knauf did not promise to pay for Jeffer's work.

86. As a result of Knauf's conduct and representations as described above, Knauf is estopped from denying it was required to pay for the goods and services provided by Jeffer.

87. Knauf has failed to pay for goods and services, which were provided by Jeffer in reliance on Knauf's express and implied representations and promises.

88. Knauf owes Jeffer a remaining balance in the amount of Five Hundred and One Thousand, Five Hundred Thirty-Seven and 20/100 Dollars ($501,537.20), plus interest, attorneys' fees, and the costs of this action.

### Third Cause of Action
### (Unjust Enrichment)

89. Jeffer repeats and incorporates by reference the allegations in the preceding paragraphs.

90. In the alternative to the first cause of action, Knauf must pay Jeffer under the doctrine of unjust enrichment.

91. Knauf received significant benefits from Jeffer's completion of the Project.

92. Through Jeffer's efforts, the Project modernized Knauf's Inwood, West Virginia Facility with an increased capacity of 260 tons.

93. Knauf knowingly and consciously received these benefits, and such benefits have been obtained without providing payment owed to Jeffer for its services.

94. Jeffer's services were not offered to Knauf gratuitously or officiously.

95. If Knauf is allowed to keep these benefits, Knauf will be unjustly enriched at Jeffer's expense, without any corresponding benefit to Jeffer.

96. Upon information and belief, Knauf continues to use the batch house and benefits from the completion of the Project today.

97. Jeffer is entitled to recover damages for Knauf's unjust enrichment in the amount of Five Hundred and One Thousand, Five Hundred Thirty-Seven and 20/100 Dollars ($501,537.20), plus interest, attorneys' fees, and the costs of this action.

### Fourth Cause of Action
### (Breach of Confidentiality Agreement)

98. Jeffer repeats and incorporates by reference the allegations in the preceding paragraphs.

99. The Confidential Disclosure Agreement is a valid and enforceable agreement between Jeffer and Knauf.

100. Jeffer disclosed Confidential Information and Trade Secrets to Knauf in the form of product specifications, drawings, schematics, diagrams, and manuals, among other information.

101. Under the terms of the Confidential Disclosure Agreement, Jeffer was the Disclosing Party.

102. Under the terms of the Confidential Disclosure Agreement, Knauf was the Receiving Party.

103. Upon information and belief, Knauf disclosed Jeffer's Confidential Information and Trade Secrets to Jeffer's competitor, Batch House LLC.

104. Jeffer did not consent to Knauf's disclosure of Jeffer's Confidential Information and Trade Secrets to Batch House LLC.

105. Knauf's disclosure of Confidential Information and Trade Secrets to Jeffer's competitor is a material breach of the Confidential Disclosure Agreement.

106. Jeffer is entitled to damages, including reasonable attorneys' fees due to Knauf's breach of the Confidential Disclosure Agreement.

## Fifth Cause of Action
### (Misappropriation of Trade Secrets: Indiana Uniform Trade Secrets Act, Indiana Code § 24-2-3 *et seq*.)

107. Jeffer repeats and incorporates by reference the allegations in the preceding paragraphs.

108. Jeffer disclosed confidential and proprietary information to Knauf, including information about its product specifications, drawings, schematics, diagrams, and manuals.

109. The confidential and propriety information Jeffer provided to Knauf which included information about its product specifications, drawings, schematics, diagrams, and manuals, constitute "trade secrets" under Indiana's Uniform Trade Secrets Act, Ind. Code Section 24-2-3-1, *et seq*.

110. Jeffer's product specifications, drawings, schematics, diagrams, and manuals are an integral part of its business as it manufactures its own products.

111. Jeffer's confidential and proprietary information referenced herein derives independent economic value because it is used to gain business advantages over its competitors.

112. Such confidential and proprietary information is economically viable to Jeffer, and is not readily ascertainable by those who may improperly obtain the economic benefit of its use.

113. Jeffer took reasonable measures to maintain the secrecy of such Trade Secrets.

114. For example, Jeffer protected its Trade Secrets by entering into confidentiality agreements with both Knauf and its subcontractor for the construction of the Project.

115. Per the Confidential Disclosure Agreement, Knauf agreed not to disclose Jeffer's Trade Secrets and Confidential Information to third parties.

116. Accordingly, Knauf was under a duty to not disclose Jeffer's Trade Secrets.

117. Knauf willfully and maliciously misappropriated Jeffer's Trade Secrets by improperly disclosing Jeffer's Trade Secrets to its direct competitor, Batch House LLC.

118. By disclosing Jeffer's confidential and proprietary information to Jeffer's competitor, Batch House LLC, in violation of the Confidential Disclosure Agreement, Knauf has misappropriated Jeffer's Trade Secrets.

119. Jeffer did not consent in any way to Knauf's disclosure of Jeffer's Trade Secrets.

120. This misappropriation of Jeffer's Trade Secrets has caused past and future financial injury to Jeffer and Jeffer is entitled to recover damages from Knauf in an amount to be proven at trial.

### Sixth Cause of Action
### (Misappropriation of Trade Secrets: Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*)

121. Jeffer repeats and incorporates by reference the allegations in the preceding paragraphs.

122. Jeffer disclosed confidential and proprietary information to Knauf, including information about its product specifications, drawings, schematics, diagrams, and manuals.

123. The confidential and propriety information Jeffer provided to Knauf which included information about its product specifications, drawings, schematics, diagrams, and manuals, constitute "trade secrets" under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

124. Jeffer's product specifications, drawings, schematics, diagrams, and manuals are an integral part of its business as it manufactures its own products.

125. Jeffer's confidential and proprietary information referenced herein derives independent economic value because it is used to gain business advantages over its competitors.

126. Such confidential and proprietary information is economically viable to Jeffer, and is not readily ascertainable by those who may improperly obtain the economic benefit of its use.

127. Jeffer took reasonable measures to maintain the secrecy of such Trade Secrets.

128. For example, Jeffer protected its Trade Secrets by entering into confidentiality agreements with both Knauf and its subcontractor for the completion of the Project.

129. Per the Confidential Disclosure Agreement, Knauf agreed not to disclose Jeffer's trade secrets and confidential information to third parties.

130. Accordingly, Knauf was under a duty to not disclose Jeffer's Trade Secrets.

131. Knauf willfully and maliciously misappropriated Jeffer's Trade Secrets by improperly disclosing Jeffer's Trade Secrets to its direct competitor, Batch House LLC.

132. By disclosing Jeffer's confidential and proprietary information to Jeffer's competitor, Batch House LLC, in violation of the Confidential Disclosure Agreement, Knauf has misappropriated Jeffer's Trade Secrets.

133. Jeffer did not consent in any way to Knauf's disclosure of Jeffer's Trade Secrets.

134. This misappropriation of Jeffer's Trade Secrets has caused past and future financial injury to Jeffer and Jeffer is entitled to recover damages from Knauf in an amount to be proven at trial.

**WHEREFORE**, Plaintiff JEFFER Engineering and Technology Co., Ltd. demands judgment against Defendant Knauf Insulation, Inc. the following relief:

    a.    For Breach of Contract, judgment in the amount of Five Hundred and One Thousand, Five Hundred Thirty-Seven and 20/100 Dollars ($501,537.20);

b. For Promissory Estoppel, judgment in the amount of Five Hundred and One Thousand, Five Hundred Thirty-Seven and 20/100 Dollars ($501,537.20);

c. For Unjust Enrichment, judgment in the amount of Five Hundred and One Thousand, Five Hundred Thirty-Seven and 20/100 Dollars ($501,537.20);

d. For Breach of Confidentiality Agreement, monetary damages in an amount to be proved at trial;

e. For Misappropriation of Trade Secrets under Indiana Uniform Trade Secrets Act, Indiana Code § 24-2-3 *et seq.,* monetary damages in an amount to be proved at trial;

f. For Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, monetary damages in an amount to be proved at trial;

g. Pre and post judgment interest;

h. Plaintiff's costs and reasonable attorneys' fees in pursuing this matter; and

i. Such other relief, legal and/or equitable, as this Court deems appropriate.

Respectfully submitted,

/s/ Krysta K. Gumbiner
Krysta K. Gumbiner (31989-45)
Dinsmore & Shohl LLP
222 W. Adams Street, Suite 3400
Chicago, IL 60606
Phone: (312) 775-1743
Fax: (312) 372-6085
Email: krysta.gumbinerdinsmore.com

*Attorney for Plaintiff Jeffer Engineering and Technology Company, Ltd.*